IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | | |
|---|---|---|
| STEPHANIE ANN BISHOP, | § § § | |
| *Plaintiff*, | § § | 5-18-CV-00210-RBF |
| vs. | § § § | |
| COMMISSIONER OF THE SOCIAL SECURITY ADMINISTRATION[1]; | § § § § | |
| *Defendant*. | § § | |

### **ORDER**

This Order concerns pro se Plaintiff Stephanie Ann Bishop's request for judicial review of the administrative denial of her application for disability-insurance benefits under Title II of the Social Security Act. This action comes to the undersigned pursuant to 28 U.S.C. § 636(c), following the parties' consent. *See* Dkt. Nos. 8, 13, & 16. This Court has jurisdiction to review a final decision of the Social Security Administration. *See* 42 U.S.C. §405(g).

After considering Bishop's Brief, Dkt. No. 14, the Brief in Support of the Commissioner's Decision, Dkt. No. 15, Bishop's Reply, No. 17, the transcript of the administrative proceedings ("Tr."), Dkt. No. 9, the other pleadings on file, the applicable authority, and the entire record in this matter, the Court will **REVERSE** the Administrative Law Judge's ("ALJ") decision and **REMAND** this matter to the Commissioner for further consideration, as discussed below.

---

[1] Nancy A. Berryhill no longer holds the title of Acting Commissioner, and no other Acting Commissioner has been named. The office of Commissioner is presently vacant, and the caption has been amended accordingly.

1

## I. Background

In December 2012, Plaintiff Stephanie Ann Bishop filed an application for disability-insurance benefits, alleging a disability onset date of June 1, 2012 due to "major back surgery steel rods L5 and S1," "hips shifting," bone spurs, depression, and degenerative bone disease. *See* Tr. 210-211, 233. Bishop's claim was initially denied and again on reconsideration for failure to meet the insured status requirements for Title II disability benefits. *See id.* 97. After conducting a hearing on the issue, the ALJ determined that Bishop had earned sufficient quarters of coverage to be disability-insured beginning on April 1, 2012, and continuing through September 30, 2012. *Id.* 98. Accordingly, the ALJ ordered the Commissioner's field office to "process [Bishop's] application for disability benefits, and make an initial disability determination based on the merits of her application and medical information." *Id.* 99. According to Bishop, benefits were mistakenly approved for both her and her daughter before a medical disability determination could be made. *See* Pl. Br. at 3. The Commissioner subsequently requested that Bishop refund the overpayment. *See id.*

Bishop's claim was initially denied on December 16, 2015, *see id.* 73-81, and again on reconsideration on February 19, 2016, *id.* 83-92. According to both state agency medical consultants there was insufficient evidence in the record prior to September 30, 2012 to evaluate Bishop's mental state. *See id.* 77, 87. Bishop then requested and obtained a hearing, which occurred on April 13, 2017 before a second ALJ. Bishop appeared pro se at the hearing, and both she and vocational expert Harris Rowzie testified. *Id.* 37-72.

On August 17, 2017, the ALJ denied Bishop's claim for benefits. The ALJ applied the five-step sequential analysis required by the regulations. At step one of the analysis, the ALJ found that Bishop had not engaged in substantial gainful activity since her alleged onset date of June 1, 2012 through her date of last insured. *Id.* 20. At step two, the ALJ found that Bishop had

the severe impairments of degenerative disc disease of the lumbar spine status postfusion surgery and cervical spondylosis. *Id.* At step three, the ALJ found that none of these impairments meet or medically equal the impairments of one of the listed impairments in the applicable Social Security Regulations. *Id.* 20-21.

Before reaching step four of the analysis, the ALJ found that Bishop retains the physical residual functional capacity to perform sedentary work with the following limitations:

> lifting/carrying 10 pounds occasionally, lifting/carrying up to 10 pounds frequently, standing/walking 2 hours in an 8 hour day, sitting 6 hours in an 8 hour day, occasionally climbing ramps/stairs, balancing stooping, kneeling, crouching, and crawling, never climbing ladders/ropes/scaffolds, avoiding all exposure to hazards (such as operational control of moving machinery and unprotected heights), and avoiding all exposure to vibration

*Id.* 21. Other than briefly noting that Bishop listed depression as one of her impairments, *see id.*, the ALJ did not analyze whether Bishop's depression was a severe impairment or how it otherwise affected her residual-functional-capacity assessment. *See* 20 C.F.R. § 404.1520a (discussing how mental impairments should be evaluated).

At step four of the analysis, after considering Bishop's residual functional capacity and the testimony of the vocational expert, the ALJ determined that Bishop was unable to perform any of her past relevant work. *See id.* 23. At step five, however, the ALJ found that considering Bishop's age, educational factors, prior work experience, and residual functional capacity, as well as the testimony of the vocational expert, there were jobs that exist in significant numbers in the national economy that Bishop could perform, namely the positions of telephone quotation clerk (DOT ("Dictionary of Occupational Titles") 237.367-046), document preparer (DOT 249.587-018), and assembler (DOT 734.687-010). *See id.* 23-24. Accordingly, the ALJ determined that Bishop was not disabled for purposes of the Act, and therefore was not entitled to receive benefits. *Id.*

Bishop subsequently appealed the ALJ's decision to the Appeals Council. In conjunction with this appeal, Bishop submitted treatment records from various medical providers, including a letter dated March 30, 2012 from psychiatrist Dr. Theodore Dake who—after seeing Bishop for an initial psychiatric evaluation on March 29—diagnosed Bishop with bipolar disorder, Attention Deficit Disorder (ADD), personality disorder, and chronic generalized anxiety disorder. *See* Dkt. No. 12 at 2. On December 21, 2017, the Appeals Council denied Bishop's request for review, determining that the treatment records submitted by Bishop, including the March 30, 2012 letter from Dr. Dake (who the Appeals Council appears to mistakenly refer to as Dr. Snyder), "does not show a reasonable probability that it would change the outcome of the decision." Tr. 2. Accordingly, the Appeals Council "did not consider and exhibit this evidence." *Id.* On February 16, 2018, after exhausting all available administrative remedies, Bishop filed suit for judicial review. Dkt. No. 1.

**II. Legal Standards**

*Standard of Review*. To review the denial of benefits, a court determines only whether the Commissioner's decision applied the proper legal standards and is supported by substantial evidence. *Martinez v. Chater*, 64 F.3d 172, 173 (5th Cir. 1995); 42 U.S.C. §§ 405(g), 1383(c)(3). "Substantial evidence is more than a scintilla, less than preponderance, and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Villa v. Sullivan*, 895 F.2d 1019, 1021-22 (5th Cir. 1990) (quoting *Hames v. Heckler*, 707 F.2d 162, 164 (5th Cir. 1983)).

A reviewing court will "weigh four elements of proof when determining whether there is substantial evidence of disability: (1) objective medical facts; (2) diagnoses and opinions of treating and examining physicians; (3) the claimant's subjective evidence of pain and disability; and (4) [the claimant's] age, education, and work history." *Martinez*, 64 F.3d at 174. "'[N]o

substantial evidence' will be found only where there is a 'conspicuous absence of credible choices' or 'no contrary medical evidence.'" *Abshire v. Bowen*, 848 F.2d 638, 640 (5th Cir. 1988) (quoting *Hames*, 707 F.2d at 164).

A reviewing court does not re-weigh the evidence or substitute its judgment for that of the Commissioner. *Newton v. Apfel*, 209 F.3d 448, 452 (5th Cir. 2000). Conflicts in the evidence and credibility assessments are for the Commissioner, not a court, to resolve. *Id.* Fact findings supported by substantial evidence are conclusive; legal conclusions and claims of procedural error are reviewed *de novo*. *See Greenspan v. Shalala*, 38 F.3d 232, 235 (5th Cir. 1994); *Carr v. Apfel*, 133 F. Supp. 2d 476, 479-80 (N.D. Tex. 2001).

*General Entitlement to Benefits*. The term "disability" means the inability to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 1382c(a)(3)(A). A claimant like Bishop is disabled only if her physical or mental impairment or impairments are so severe that she is unable to perform his previous work and cannot—considering her age, education, and work history—participate in any other kind of substantial gainful work that exists in significant numbers in the national economy and regardless of whether such work exists in the area in which she lives, a specific job vacancy exists, or she would be hired if he applied for work. 42 U.S.C. §§ 423(a)(1), 1382c(a)(3)(B).

*Overview of the Evaluation Process and Burden of Proof*. "To prevail on a claim for disability benefits, a claimant must establish a physical or mental impairment lasting at least twelve months that prevents [him] from engaging in any substantial gainful activity." *Carr*, 133 F. Supp. 2d at 479. To determine whether substantial gainful activity is possible, the pertinent regulations require a five-step sequential inquiry. *See id.*; 20 C.F.R. §§ 404.1520, 416.920.

At the first step, the Commissioner determines whether the claimant is currently engaged in substantial gainful activity. 20 C.F.R. § 404.1520(a)(4)(i). "Substantial gainful activity" means "the performance of work activity involving significant physical or mental abilities for pay or profit." *Newton*, 209 F.3d at 452-53 (citing 20 C.F.R. § 404.1572(a)-(b)). An individual working and engaging in substantial gainful activity will not be found disabled, regardless of medical condition or age, education, and work experience. 20 C.F.R. § 404.1520(b).

Step two addresses whether the claimant has a medically determinable physical or mental impairment that is severe, or a combination of impairments that is severe. 20 C.F.R. § 404.1520(a)(4)(ii); *Stone v. Heckler*, 752 F.2d 1099, 1101 (5th Cir. 1985). "[A]n impairment can be considered as not severe only if it is a slight abnormality having such minimal effect on the individual that it would not be expected to interfere with the individual's ability to work, irrespective of age, education or work experience." *Stone*, 752 F.2d at 1101 (quotation marks omitted). An individual without a "severe impairment" will not be considered disabled. 20 C.F.R. § 404.1520(c).

At step three, an individual who has an impairment that meets or is medically equal to the criteria of a listed impairment in Appendix 1 of the regulations ("the Listings") will be considered disabled without the consideration of other vocational factors. 20 C.F.R. § 404.1520(d). But if the claimant does not qualify under the Listings, then the evaluation continues to the fourth step. Before commencing the fourth step, the claimant's residual functional capacity is assessed. This involves a "multidimensional description of the work-related abilities" a claimant retains despite medical impairments. 20 C.F.R. § Pt. 404, Subpt. P, App. 1; *see also* 20 C.F.R. § 404.1520(e); *Perez v. Barnhart*, 415 F.3d 457, 461-62 (5th Cir. 2005).

At the fourth step, the residual-functional-capacity assessment and the demands of the claimant's past relevant work are reviewed. 20 C.F.R. § 404.1520(f). Past relevant work constitutes either "the actual demands of past work" or "'the functional demands . . . of the occupation as generally required by employers throughout the national economy.'" *Jones v. Bowen,* 829 F.2d 524, 527 n.2 (5th Cir. 1987) (quoting SSR 82-61). If an individual is capable of performing the work she has actually performed in the past or as defined by the DOT, a finding of "not disabled" will be made. 20 C.F.R. § 404.1520(f).

The fifth step evaluates the claimant's ability—given residual capacities, age, education, and work experience—to perform other work. 20 C.F.R. § 404.1520(g). If an individual's impairment precludes performing any other type of work, the claimant will be found disabled. *Id.*

The claimant bears the burden of proof at the first four steps of the evaluation process. *Leggett v. Chater*, 67 F.3d 558, 564 (5th Cir. 1995). Once the claimant satisfies his burden at each of the first four steps, the burden then shifts to the Commissioner at step five to show there is other gainful employment available in the national economy that the claimant is capable of performing. *Greenspan*, 38 F.3d at 236. This burden may be satisfied either by reference to the Medical-Vocational Guidelines of the regulations or by expert vocational testimony or other similar evidence. *Fraga v. Bowen*, 810 F.2d 1296, 1304 (5th Cir. 1987). If the Commissioner adequately points to potential alternative employment, the burden shifts back again to the claimant to prove inability to perform that work. *Anderson v. Sullivan*, 887 F.2d 630, 632-33 (5th Cir. 1989). A finding that a claimant is not disabled at any point in the five-step evaluation is conclusive and terminates the analysis. *Lovelace v. Bowen*, 813 F.2d 55, 58 (5th Cir. 1987).

### III. Analysis

Bishop complains that the ALJ committed several errors, each requiring remand. For the reasons discussed below, the undersigned finds that the ALJ failed to fully and properly develop

the record regarding Bishop's mental status during the relevant time period. This error alone warrants a remand; Bishop's other points of error need not be addressed, although the Court will note that it lacks jurisdiction to award Bishop's daughter benefits as she requests or to consider Bishop's request for attorneys' fees for services allegedly rendered during the first administrative hearing. *See* 42 U.S.C. § 405(g), (h); *see also* Tr. 127 (letter from Bishop's former attorney explaining that the firm has waived its right to collect an attorney fee on this claim).

"The ALJ owes a duty to a claimant to develop the record fully and fairly to ensure that his decision is an informed decision based on sufficient facts." *Brock v. Chater*, 84 F.3d 726, 728 (5th Cir. 1996). This basic obligation "rises to a special duty" when a claimant such as Bishop appears before an ALJ pro se, requiring the ALJ to "scrupulously and conscientiously probe into, inquire of, and explore for all the relevant facts." *Kane v. Heckler*, 731 F.2d 1216, 1220 (5th Cir. 1984) (quotations omitted); *see also Castillo v. Barnhart*, 325 F.3d 550, 552-53 (5th Cir. 2003). If the ALJ falls short in this duty, he or she lacks sufficient facts to make an informed decision, and, consequently, the decision is not supported by substantial evidence. *Kane*, 731 F.2d at 1220.

At the administrative hearing, the ALJ here specifically inquired about Bishop's mental state during the relevant time period, explaining that he "didn't see any diagnosis of depression prior to September 2012." *See* Tr. 60-61. Although Bishop responded that "there maybe should've been," *see id.,* there is no indication in the record that the ALJ attempted to inquire further or acquire any such records. Instead, the ALJ appears to have dropped the issue after learning that Bishop did not commence medication until after 2012. *See id.* As a preliminary matter, the record before the ALJ reveals that Bishop actually began taking an anti-depressant (Wellbutrin) on March 2, 2012—a few months before her alleged disability onset date. *See id.* 78, 88. Regardless, the failure to commence medication during the relevant time period does not necessarily reflect that Bishop did not suffer from depression. As Bishop was proceeding pro se

at the administrative level, it was the ALJ's obligation to determine whether Bishop had ever been diagnosed with or sought treatment for her claimed depression and how this alleged mental impairment affected her ability to work. Although Bishop suggested that records may exist on this point, the ALJ failed to further develop the issue. In fact, a review of the hearing transcript indicates that Bishop mentioned having "bad anxiety"[2]—another mental impairment that the ALJ did not explore. Accordingly, the ALJ erred here by failing to fully and fairly develop the record.[3]

Where—as is the case here—an ALJ fails to fully and fairly develop the record, remand is only appropriate if the applicant (Bishop) can show that "had the ALJ done his duty, she could and would have adduced evidence that might have altered the result." *Kane*, 731 F.2d at 1220. Bishop has done just that. She has produced evidence showing a diagnosis of bipolar disorder, ADD, personality disorder, and chronic generalized anxiety disorder a few months before her alleged disability onset date. *See* Dkt. No. 12 at 2. Although the diagnosis of an impairment alone does not end the inquiry as a matter of law, *see Hames v. Heckler*, 707 F.2d 162, 165 (5th Cir. 1983), at present the record here is incomplete. The ALJ never considered whether Bishop's mental impairments were severe, whether the impairments satisfied any of the listings, or whether this diagnosis rendered her functionally impaired. Accordingly, remand is required to fully and fairly develop the administrative record regarding the severity of Bishop's mental

---

[2] *See* Tr. 63.

[3] *See Goin v. Astrue*, No. 3:12-CV-02471-B-BK, 2013 WL 1130050, at *4 (N.D. Tex. Feb. 19, 2013), *report and recommendation adopted*, 2013 WL 1131272 (N.D. Tex. Mar. 19, 2013) ("The ALJ's omission of relevant evidence of a mental impairment in a claimant's record indicates that the ALJ failed to "fully and fairly" develop the facts."); *Cf. Vine v. Astrue*, No. 3:10–895–BK, 2010 WL 4791487, at *6 (N.D. Tex. Nov. 18, 2010) (recognizing that an ALJ may satisfy his heightened duty to develop the record "by asking the claimant about his medical condition, the effectiveness of treatment, how the claimant's daily routine has been affected by his medical problems, his ability to perform various tasks, and by inviting the claimant to include anything else in the record").

impairments and their effect on her ability to work. *See, e.g., Goin*, 2013 WL 1130050, at *5 (ALJ committed reversible error where he failed to acknowledge plaintiff's diagnosis of anxiety and depression and did not discuss plaintiff's limitations based on those impairments). If necessary, the ALJ shall hold another hearing and obtain new vocational expert testimony.

## IV. Conclusion

For the reasons discussed above, the ALJ's decision that Bishop is not disabled is **REVERSED** and this case is **REMANDED** to the Commissioner pursuant to sentence four of 42 U.S.C. § 405(g)[4] for further consideration consistent with this opinion.

**IT IS SO ORDERED**.

SIGNED this 21st day of March, 2019.

RICHARD B. FARRER
UNITED STATES MAGISTRATE JUDGE

---

[4] *See Lampkin v. Astrue*, No. A-10-CA-757 LY, 2011 WL 13324141, at *4 (W.D. Tex. Jun. 21, 2011*), report and recommendation approved sub nom*. 2011 WL 13324343 (W.D. Tex. Oct. 3, 2011) (remanding case to fully develop record pursuant to sentence four where the Commissioner already filed an answer, and the plaintiff did not seek remand for consideration of new, material evidence that was for "good cause" not properly presented) (citing *Buckner v. Apfel*, 213 F.3d 1006, 1010 (8th Cir. 2000) (finding that district court's remand should have been pursuant to sentence four as opposed to sentence six, where purpose of the remand was to prompt additional fact finding and further evaluation of the existing facts)); *Jackson v. Chater*, 99 F.3d 1086, 1092 (11th Cir. 1996) ("The remand to develop a full and fair record in accordance with law is a sentence-four remand.").